## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRAVE OPTICAL INC.,[1]

      **Plaintiff,**

                              **Case No. 1:23-cv-793**

      v.                      **JUDGE DOUGLAS R. COLE**

LUXOTTICA OF AMERICA INC.,

      **Defendant.**

### OPINION AND ORDER

On March 31, 2025, the Court issued an Opinion and Order (Doc. 39) granting Defendant Luxottica of America Inc.'s Motion to Dismiss (Doc. 19). In that Opinion,[2] the Court found: (1) Plaintiffs' Sherman Act claims are time-barred, (Doc. 39, #1001–09); (2) the breach of contract claims are unsupported by any contractual provisions, (*id.* at #1009–13); (3) Ohio state law does not apply to this case, (*id.* at #1013–15); (4) the misrepresentation claims are time barred, (*id.* at #1015–16); (5) the tortious interference claim is also time barred, (*id.* at #1017–18); and (6) the negligence claims fail because they allege only economic loss, (*id.* at #1018–19). The Court dismissed

---

[1] Originally, there were three plaintiffs: Brave Optical Inc., Western State Optical, Inc., and DH Retail, Inc. (Compl., Doc. 1). The Court dismissed DH Retail on March 31, 2025, because the parties effectively stipulated such dismissal. (Doc. 39, #999 n.5 (citing Third Joint Status Report, Doc. 38)). While this Court later denies as moot Plaintiffs' Motion for Leave to File First Amended Complaint, in that Motion, Plaintiffs remove Western State because it sold its franchise and signed a general release with Luxottica. (Doc. 43, #1057). That motion also attempts to add a new plaintiff, Stark Vision, Inc. (*Id.* at #1055). The Court will not address the validity of adding that plaintiff here though. For purposes of this Opinion and Order, the Court will refer to Brave Optical as the only plaintiff.

[2] There, the Court summarized the factual background giving rise to this lawsuit. (Doc. 39, #992–1000). The Court declines to repeat it here.

the time-barred claims with prejudice (Counts 1, 2, 3, 5, 6, and 9), but it dismissed the remaining counts without prejudice (4, 7, 8, 10, and 11). (*Id.* at #1019). The Court noted that Plaintiffs could move for leave to amend the Complaint to cure the deficiencies for the non-time-barred counts. (*Id.*). Since then, Brave Optical has filed a Motion for Reconsideration (Doc. 42) of the time-barred claims and a Motion for Leave to File First Amended Complaint (Doc. 43) for the other counts.

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Reconsideration (Doc. 42). Because the Court gives Plaintiff an opportunity to file a motion for leave to amend, including the antitrust claims, the Court **DENIES AS MOOT** Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 43), Defendant's Motion for Leave to File Exhibits Under Seal (Doc. 48), and Defendant's Motion for Leave to File Sur-Reply (Doc. 51).

## LEGAL STANDARD

Brave Optical states that it moves for reconsideration under Rule 59(e). (Doc. 42, #1038). But it is not at all clear that is the relevant rule. That rule allows a party to move the court to alter or amend a judgment. And judgment means *final* judgment. *See Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 436 (6th Cir. 2005). But when a district court's order dismissing a complaint expressly provides for an opportunity to amend, it is not a final judgment. *See Phillips v. Riley*, No. 23-5829, 2023 WL 8726053, at *1 (6th Cir. Nov. 15, 2023) (citations omitted) ("The district court's [] order dismissing [Plaintiff's] complaint with leave to amend is neither a final order

2

nor an appealable interlocutory or collateral order."). And that is what happened here. (Doc. 39, #1019). So it is doubtful that Rule 59(e) applies.

It turns out that that is not all bad for Brave Optical. Where Rule 59(e) applies, it imposes a high bar: "A court may grant a Rule 59(e) motion to alter or [to] amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citation omitted). With interlocutory orders, by contrast, the Court has more flexibility as to reconsideration.

To start, the Court is not bound by Rule 59(e)'s strict 28-day deadline. Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment *must* be filed no later than 28 days after the entry of the judgment." (emphasis added)). To the contrary, "every order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 12 (1983); *see also* Fed. R. Civ. P. 54(b) (stating that any order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all of the claims"); *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citation omitted) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment."). As for the merits, the Court has significant discretion and can "afford such relief from

3

[interlocutory orders] as justice requires." *Rodriguez*, 89 F. App'x at 959 (citing *Citibank N.A. v. FDIC*, 857 F. Supp. 976, 981 (D.D.C. 1994)).

That is not to say there are no limits. For example, in deciding what "justice requires," courts often look to Rule 59 for guidance. *Id.* at 959 n.8. So, in deciding whether to reconsider interlocutory orders, courts generally ask whether there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* at 959 (citation omitted). And motions for reconsideration "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Wright & Miller's Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

Moreover, such motions should be granted "sparingly because of the interests in finality and conservation of scarce judicial resources," *U.S. ex rel. Am. Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1998) (citation omitted), interests that apply even with regard to interlocutory orders, *Hagy v. Demers & Adams, LLC*, No. 2:11-cv-530, 2013 WL 5334106, at *2 (S.D. Ohio Sep. 23, 2013). "A movant has no right to reconsideration of an interlocutory order simply because the movant makes the motion in good faith." *Rodriguez*, 89 F. App'x at 959 n.7.

Brave Optical also styles its Motion as a Motion for Leave to Amend. (Doc. 42, #1028). Generally, Rule 15 applies and states that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But when deciding whether to grant leave to amend, courts may consider "undue delay in filing, lack of notice to the

opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (citation omitted).[3]

### LAW AND ANALYSIS

Plaintiff Brave Optical moves for reconsideration on several grounds. First, it argues that the Court clearly erred in its characterization of *Klehr v. A.O Smith Corporation*, 521 U.S. 179 (1997), and related Sixth Circuit precedent when it determined there was no continuing antitrust violation. (Doc. 42, #1039–46). Second, Plaintiff claims that the Court "construed key facts to favor Defendant" by stating that the Master Agreement between Defendant Luxottica and Vision Service Plan (VSP) was tacitly incorporated into Plaintiff's franchise agreement. (*Id.* at #1047 (citing Doc. 39, #1008 n.9)). Rather than incorporate the Master Agreement, Plaintiff argues its Complaint alleged that Defendant concealed the Master Agreement from it, which helps establish a continuing violation. (*Id.* at #1047–48).

---

[3]Brave Optical initially cites *Leisure Caviar* as imposing a "heavier burden" to justify amendment after an adverse judgment. (Doc. 42, #1038 (citing *Leisure Caviar v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010))). But as Brave Optical itself points out in its Reply, "that case involved a post-judgment motion for leave to amend." (Doc. 47, #1125). The court in *Leisure Caviar* held applying Rule 15's liberal standard would allow plaintiffs to "sidestep the narrow grounds of obtaining post-judgment relief under Rules 59 and 60." 616 F.3d at 616. Because this Court's Opinion and Order was an interlocutory order, *see* infra Part A, the higher standard does not apply, *see Holland v. Mercy Health*, 375 F. Supp. 3d 819, 820 (N.D. Ohio 2019) (rejecting Defendant's argument that a higher burden applied because Court's earlier Order was not a final judgment but rather an interlocutory order).

Alternatively, Plaintiff seeks leave to amend the antitrust claims based on new evidence of more-recent Master Agreements between Luxottica and VSP, agreements that are within the statute of limitations. (*Id.* at #1049). Beyond that, Brave Optical also requests leave to amend its fraud claims to show it did not know of Luxottica's misrepresentations regarding Eyecon as early as the Court found in its previous Opinion and Order. (*Id.* at #1051–52). Each of these arguments, if successful, would bring Plaintiff's time-barred claims within the statute of limitations. Ultimately, while the Court does not agree with all of Plaintiff's arguments, the Court concludes that Plaintiff can file a motion to amend its Complaint as to the antitrust and fraud claims. Take each argument in turn.

## A. The Court Will Consider Plaintiff's Motion.

Before turning to the merits of this Motion, the Court begins by addressing its timeliness. Defendant Luxottica argues that the Court must deny the Motion right off the bat for the simple reason that Brave Optical filed the motion 29 days after the Court's Opinion and Order. According to Luxottica, Rule 59(e) imposes a 28-day deadline, which the Court lacks power to extend. (Doc. 44, #1093–94). Brave Optical, on the other hand, argues that the Court's Opinion and Order was not a final judgment, so the deadline is less strict. (Reply, Doc. 47, #1117–18).

They are both right in part. Luxottica is correct that Rule 59(e) imposes a strict 28-day deadline. But Rule 59(e), as noted above, applies only to final judgments. *See Russell*, 141 F. App'x at 436. The Order Brave Optical attacks here was interlocutory, however, as it specifically provided Plaintiff an opportunity to amend the Complaint.

6

(Doc. 39, #1019–20); *see Azar v. Conley*, 480 F.2d 220, 223 (6th Cir. 1973) (holding an order dismissing a complaint is not a final judgment if it "may be saved by amendment"); *Phillips*, 2023 WL 8726053, at *1 (citation omitted) ("The district court's … order dismissing [Plaintiff's] complaint with leave to amend is neither a final order nor an appealable interlocutory or collateral order."). A final judgment, by contrast, "ends litigation on the merits and leaves nothing to do but execute the judgment." *United States v. Martirossian*, 917 F.3d 883, 886 (6th Cir. 2019) (citing *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989)); *see also Phillips*, 2023 WL 8726053, at *1 ("A final order is one that disposes all issues in dispute as to all parties."). Because the Court's Opinion and Order did not fully dispose of all issues and expressly provided an opportunity to amend, it was not a final judgment, but rather an interlocutory order. So Rule 59(e)'s strictures do not apply.

As a technical matter, the Court can reconsider an interlocutory order at any time until final judgment. *Moses H. Cone,* 460 U.S. at 12. That said, some courts have looked to Rule 60(c)'s "reasonable time" standard as providing an outer bound. *See Allied Erecting & Dismantling Co., Inc. v. U.S. Steel Corp.*, 76 F. Supp. 3d 691, 693 n.3 (N.D. Ohio 2015) (considering reconsideration motion filed 48 days after district court's order). But here, the Court entered its Opinion and Order on March 31, 2025. (Doc. 39). Plaintiff filed its Motion for Reconsideration on April 29. (Doc. 42). Even if Rule 59's deadline applied, Plaintiff's Motion would only be a day late. And the

Motion is within the 30-day window the Court set to file a motion to amend.[4] (Doc. 39, #1019). So even assuming a "reasonable time" standard applies, the Court concludes it is met here. Accordingly, the Court will consider Plaintiff's Motion.

**B.     The Court Did Not Clearly Err in Interpreting *Klehr* and Related Cases.**

Now turn to the merits. Brave Optical first argues that the Court clearly erred in its interpretation of *Klehr* and related Sixth Circuit precedent when it rejected Brave Optical's antitrust claims. (Doc. 42, #1036). But in pressing that argument, it fails to meet the standard for reconsideration. It does not propose any newly discovered evidence, intervening caselaw, or manifest injustice. Instead, its Motion relitigates issues the Court addressed and rejected in its prior Opinion. (Doc. 39, #1001–09 (rejecting antitrust claims)).

In short, Plaintiff believes that *Klehr* determined that price-fixing conspiracies are classic examples of continuing violations and that Sixth Circuit precedent supports this interpretation. (Doc. 42, #1039). According to Brave Optical, for price-fixing conspiracies, each sale at the fixed price results in a new and continuing violation, giving rise to a new limitations period. That in turn means that the Court erred in finding that the statute of limitations barred the claim in its entirety. (*Id.*).

---

[4] The Court granted a motion for extension of time to file a motion for leave to amend. (4/25/25 Not. Order). Nevertheless, Plaintiff still filed the Motion for Reconsideration within the original 30-day window. (Doc. 39, #1019).

But Plaintiffs[5] already made this very argument in their Response to Defendant's Motion to Dismiss. (Doc. 26, #630–32). And in pressing the argument, Plaintiffs only referred to *Klehr* in a parenthetical citation when they quoted from an Eighth Circuit case, *In re Pre-Filled Propane Tank Antitrust Litigation*, 860 F.3d 1059 (8th Cir. 2017). (Doc. 26, #631). If Brave Optical had wanted to make *Klehr* the centerpiece of its statute-of-limitations argument, or thought that the case had more significance than the Response let on, that would have been the time to say so. A motion for reconsideration is not an opportunity to raise arguments that a party could have raised previously. *Exxon Shipping*, 554 U.S. at 485 n.5.

In any event, despite the limited reliance on *Klehr* in Plaintiffs' original briefing, the Court spent two pages of its prior Opinion and Order specifically discussing the case, and eight more pages reviewing related case law. (Doc. 39, #1001–09). In that portion of its Opinion, beyond offering its own explanation for why the continuing violations doctrine did not apply on the facts here, the Court also gave three reasons Plaintiffs' argument was unavailing: (1) the Court is not obligated to follow out-of-circuit precedent (i.e., the Eighth Circuit's interpretation of *Klehr* in *In re Pre-Filled Propane Tank*); (2) *Klehr* was nonbinding dicta in a civil RICO case, whereas binding Sixth Circuit precedent compels a different result in this price-fixing

---

[5] Multiple Plaintiffs filed the original motion. But only one Plaintiff, Brave Optical, moves for reconsideration. *See* supra note 1.

case;[6] and (3) the language in *Klehr* on which Brave Optical relies does not go as far as Brave Optical contends. (*Id.* at #1007–09).

The Court acknowledges that some Sixth Circuit precedent suggests that price-fixing conspiracies can be continuing-violations cases. *See, e.g., In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) ("*Klehr* simply reiterates that the antitrust laws recognize continuing violations and, more precisely, that a new § 1 claim arises each time a company sells a price-fixed product."); *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 599 (6th Cir. 2014) (noting that the Sixth Circuit only applies the continuing violations doctrine in conspiracy and monopolization cases). But the Court must also square those comments with other sections of the same cases stating that continuing violations cannot simply be "reaffirmations" or "unabated inertial consequences" of prior wrongful conduct. *Z Techs.*, 753 F.3d at 600 (quotation omitted). As the Sixth Circuit has explained, "an overt act (1) must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) must inflict a new and accumulating injury on the plaintiff." *Id.* (cleaned up). And, importantly, it must be an overt act *by the defendant. See, e.g., Peck v. General Motors Corp.*, 894 F.2d 844, 849 (6th Cir. 1990) (emphasis added) (quoting *Barnosky Oils*,

---

[6] Plaintiff argues that while the language from *Klehr* may be dicta, this Court is still obligated to follow it. (Doc. 42, #1043 (citing *American Civil Liberties Union of Ky. V. McCreary Cnty., Ky.*, 607 F.3d 439, 447 (6th Cir. 2010))). On that front, this Court agrees that "lower courts are obligated to follow Supreme Court dicta, *particularly where there is not substantial reason for disregarding it.*" *American Civil Liberties Union of Ky.*, 607 F.3d at 447 (quotation omitted) (emphasis added). But here, the Court concluded that the Sixth Circuit's subsequent decisions detailing the limitations of the continuing violations doctrine provided a substantial reason to depart from *Klehr*'s dicta.

*Inc. v. Union Oil Co. of Cal.*, 665 F.2d 74, 81 (6th Cir. 1981)) ("'[W]hen a continuing antitrust violation is alleged, a cause of action accrues each time a plaintiff is injured *by an act of the defendants.*'"); *see also id.* (emphasis added) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987)). ("[E]ven when a plaintiff alleges a continuing violation, an overt act *by the defendant* is required to restart the statute of limitations and the statute runs from the last overt act.").

Putting that all together, the Court does not read this precedent as suggesting that, as to every price-fixing conspiracy, every subsequent sale per se constitutes a continuing violation such that every participant in the alleged price-fixing conspiracy is subject to a new statute of limitations.[7] Sure, *sometimes* subsequent sales give rise to new violations (and a new limitations period). Imagine, for example, that Competitor A and Competitor B conspire to fix prices for sales to *unrelated* third-party customers. In that setting, the Court agrees that each sale at an elevated price

---

[7] Plaintiffs also argue that *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401 (6th Cir. 1999), which the Court relied on in its previous Opinion & Order, (*see* Doc. 39, #1003), is distinguishable because it involved a kickback scheme under the Robinson-Patman Act, (Doc. 42, #1044–45). They likewise argue that *Z Technologies* and *Travel Agent* are distinct because the former involved a post-merger Sherman Act challenge, (*id.* at #1045), and the latter involved a post-bankruptcy claim, (*id.* at #1045–46). While the *Z Technologies* court found that post-merger-and-acquisitions price increases are different from price-fixing conspiracies, it assumed that conspiracies require ongoing collusion. 753 F.3d at 599. The ongoing collusion supported the continuing violations doctrine. *Id.* But it is not clear that there is "further collusion" at each alleged continuing violation here. Rather, based on Plaintiff's own allegations, it appears that Luxottica and VSP entered into a contract at one point in time that continues to apply. This is more similar to the situation in *Grand Rapids* where the subsequent payments "were only a manifestation of the previous agreement." 188 F.3d at 406. And as Plaintiff acknowledges, a "mere failure to act to reverse that decision was not a continuing violation." (Doc. 42, #1046 (quoting *In re Mallinckrodt PLC*, No. 20-12522, 2021 WL 4876908, at *9 (Bankr. D. Del. Oct. 19, 2021) (describing *Travel Agent*))). Here, Luxottica's failure to repudiate the allegedly price-suppressive contract does not turn the contract's ripples into continuing violations.

11

may work a new antitrust injury, giving rise to a new limitations period, at least as to the competitor that actually sold the purchaser the product. Or, as the Court put it in its previous Opinion, "where the purchasers are not *themselves* parties (directly or indirectly) to the contracts that create the alleged price-fixing arrangement, then perhaps each new sale would be a continuing violation that created a new and independent harm." (Doc. 39, #1008 n.9 (emphasis in original)).

But that is not always the case. Imagine instead that Competitor A and Competitor B had a contract specifying the terms on which Competitor B would contract with Customer C to sell goods at a particular price for a specified time. In that setting, two potential problems arise. First, each subsequent sale from Competitor B to Customer C at the pre-arranged price reflected in the contract between B and C could simply constitute a "reaffirmation" of that earlier (and unlawfully price-fixed) contract. *See Z Techs.*, 753 F.3d at 600 (citation omitted). Thus, a later sale would not constitute a continuing violation for statute-of-limitations purposes. Second, and separately, the last "overt act" that *Competitor A* undertook in this hypothetical was the contract it signed with Competitor B. So, even if Customer C could sue Competitor B on a continuing violation theory, that would not necessarily likewise extend to Competitor A.

Or at least that is how the Court sees it. And under that reading, the Court concluded (for reasons discussed more fully below) that this case is more like the latter hypothetical than the former. And it reaches that same conclusion now.

Brave Optical is, of course, free to disagree with the Court's reading of Sixth Circuit caselaw. But, if Brave Optical contends the Court got the legal framework wrong, then appeal, not reconsideration, is the path it should pursue.

**C.    The Court Grants Reconsideration for Plaintiff to Move for Leave to File an Amended Complaint with Additional Detail about Plaintiff's Contract with VSP.**

Relatedly, Plaintiff argues that, even if the Court has the correct *legal* framework, the Court "construed key facts to favor Defendant" by noting in its previous Opinion and Order that the franchise agreement "tacitly incorporates" the Master Agreement (i.e., the agreement between Luxottica and VSP). (*See* Doc. 39, #1008 n.9; Doc. 42, #1046–48). That is, according to Brave Optical, the Court's statute of limitations holding turned on this assumption of tacit incorporation. But that assumption, Brave Optical says, arose from construing the alleged facts in *the defendant's* favor, which the Court must not do in reviewing a motion to dismiss.

The Court agrees with Brave Optical's starting point. Courts are certainly obligated to "construe the complaint in the light most favorable to plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). That said, even when viewing the allegations most favorably to the plaintiff, "we need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). So presumably, Plaintiff is arguing that the Court committed clear error or that its Opinion will result in manifest

injustice, *see Rodriguez*, 89 F. App'x at 959 (citation omitted), because it did not "draw all reasonable inferences" in Brave Optical's favor, *Directv*, 487 F.3d at 476.

After (again) reviewing the Franchise Agreements and Franchise Disclosure Documents, the Court acknowledges that neither of those documents mentions the Master Agreement between Luxottica and VSP. (*See* Docs. 20-1–20-8). Rather, one agreement[8] states that a "Licensed Operator will apply to become a provider in EyeMed Vision Care [] and Vision Service Plan … [and] also agrees to honor any customer who may participate in any program developed for EyeMed or VSP." (Doc. 20-6, #513). But admittedly, this document does not expressly discuss any agreement regarding reimbursement rates.

At the same time, the Court remains convinced that, based on reasonable inferences from the facts the Complaint alleges, there must have been a tacit incorporation of the Master Agreement (i.e., the agreement between Luxottica and VSP) in the contracts between Brave Optical and VSP, at least in the sense that the Court is using that term for continuing-violation purposes. Perhaps a more fulsome explanation would be as follows. As the Court understands the allegations, Plaintiff alleges three different types of contracts at play: (1) the Franchise Agreement between each franchisee (such as Brave Optical) and Luxottica, (*see* Doc. 1, #3); (2) a Master Agreement between Luxottica and VSP, (*see id.* at #13); and (3) a contract between each franchisee and VSP, (*see id.* at #14 ("Brave had a separate contract with

---

[8] Defendant describes this agreement as the "2015 Brave-FDD." (Doc. 44, #1106). As far as the Court can tell, however, this document was not signed by any party nor dated. (Doc. 20-6, #509 (blank form)).

14

VSP.")). These three contracts work together. According to the Complaint, the Master Agreement was where "Luxottica agreed to VSP's below-market reimbursement rates for its franchisees." (*Id.* ¶ 51). As for the separate contract between a franchisee (such as Brave Optical) and VSP, the Complaint does not specify the terms of that contract or provide it as an exhibit. But the only reasonable inference the Court can draw is that the contract with a vision insurance company would include the relevant reimbursement rates. As Defendant points out, it would be unreasonable to infer that "Plaintiffs somehow did not know that they received reimbursement rates from VSP." (Doc. 44, #1102). Perhaps the Brave Optical-VSP contract, even if it includes the allegedly below-market reimbursement rates, does not state that the rates are set by the Master Agreement.[9] But it strikes the Court that the Brave Optical-VSP contract would contain at least some of these reimbursement terms. So, whether through its direct contract with VSP, or its franchise agreement with Luxottica, or both, Brave Optical was a party to a contract that tacitly incorporates the Master Agreement, at least as to any price-fixing terms in that agreement that are directed at franchisees. And that means that the continuing reimbursements were merely "reaffirmations" of a single contract (whether the contract between VSP and Brave Optical, or the Master Agreement between Luxottica and VSP), which in turn means that Brave Optical did

---

[9] The Court cannot be sure what exact terms the Master Agreement, labeled the 2014 Retail Agreement, includes because it does not have a copy of such agreement, despite Defendant seeking leave to file it under seal, (Doc. 17, #78), which the Court granted, (Doc. 18). Additionally, part of Plaintiff's antitrust claim is that the Master Agreement contained terms allowing Luxottica to terminate a franchisee's in-network status with VSP if the franchisee stopped using Eyecon. (Doc. 1, #14). Without the Master Agreement, the Court is unable to evaluate this claim.

not suffer a continuing violation. At the very least, there was no "overt act" *by Luxottica* during the requisite window.

That said, the Court can envision a scenario where a continuing violation involving Luxottica could perhaps arise. Imagine that Brave Optical and VSP signed reimbursement agreements within the applicable limitations period, even though the original Franchise Agreement (between Luxottica and Brave Optical) and Master Agreement (between Luxottica and VSP) were signed outside the statute of limitations. For example, Brave Optical may have had an annual contract with VSP such that Brave Optical signed a new contract each year until 2022 (when it sold its franchise). (*See* Doc. 1, #2). In that situation, if VSP executed that new contract at Luxottica's behest, or perhaps even with Luxottica's approval, that may constitute a new "overt act" by Luxottica. *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 947 (E.D. Tenn. 2008) (holding that "annual renewal of full supply agreements" sufficiently alleged a continuing violation); *Solidstrip Inc. v. U.S. Tech. Corp.*, 723 F. Supp. 3d 593, 608–09 (N.D. Ohio 2024) (finding that the separate-accrual rule prevented dismissal of Robinson-Patman Act claim because Defendant obtained new contracts within the statute of limitations period). Or perhaps Luxottica signed a new contract with VSP regarding Luxottica's franchisees.

The point is simply this—to proceed on an antitrust claim against Luxottica, Plaintiff must point to some overt act *Luxottica* took during the relevant time period. And on that latter point, as the Court also explained in its previous Opinion and Order, Plaintiffs filed their Complaint on December 4, 2023. So Brave Optical would

16

need to point to a violation (i.e., an overt act) that occurred *after* December 4, 2019, for the action to be timely. (Doc. 39, #1001–09).

All of that said, the Court concedes that Plaintiff may be able to plead facts constituting a continuing violation under the framework set forth above. And if it can, that would cure the statute of limitations problem. So the Court grants the motion for reconsideration on this issue. Specifically, the Court amends its previous Opinion and Order to dismiss the antitrust claims *without* prejudice. Accordingly, Plaintiff may request leave to amend its Complaint regarding these claims (Counts 1, 2, and 3), in addition to the claims the Court originally dismissed without prejudice (Counts 4, 7, 8, 10, and 11).

**D.      Brave Optical Cannot Rely on the 2024 Master Agreement to Support an Amended Complaint.**

Brave Optical also requests leave to amend its antitrust claims due to new evidence. (Doc. 42, #1049). It points to a new 2024 agreement between Luxottica and VSP that renews the 2014 Master Agreement. (*Id.*). Plaintiff argues this new agreement establishes a continuing violation and thus brings its action within the four-year statute of limitations. (*Id.* at #1050). Brave Optical also references other "follow-on agreements" between 2014 and 2024. (*Id.* at #1049). It further pledges to add details about Defendant's alleged concealment of these agreements and their effects. (*Id.* at #1049–50).

As noted above, the Court already is granting the reconsideration motion as to the antitrust claims. *See* supra Part C. So perhaps it is unnecessary to address this argument as well. That said, in the interest of efficiency, the Court notes what

appears to be an insurmountable problem with at least one aspect of this particular argument—Brave Optical would not have standing to claim injury based on the 2024 Master Agreement or to rely on this agreement to establish a continuing violation. That is because Brave Optical owned franchises from 2016 to *2022*. (Doc. 1, #2). That means Brave Optical did not own a Luxottica franchise at the time that Luxottica entered a new agreement with VSP in 2024. So Brave Optical cannot claim that the 2024 Agreement caused it harm.

But Brave Optical also alleges that "Luxottica and VSP *repeatedly* entered into follow-on agreements to the 2014 Master Agreement—including during the December 2019-through-present timeframe." (Doc. 42, #1049 (emphasis added)). If so, such agreements may count as intervening "overt acts" by Luxottica, giving rise to a new limitations period. In its motion for reconsideration, though, the only such follow-on agreement that Brave Optical mentions is the 2024 Master Agreement, which does not work for the reasons just noted. (*Id.*). In any event, to the extent that such agreements in fact exist, and became effective during the time that Brave Optical remained in a franchise relationship with Luxottica, Brave Optical is free to flesh out such allegations in any proposed amended complaint.

**E.    The Court Grants Reconsideration as to the Fraud Claims.**

Finally, Brave Optical requests leave to amend what it calls its fraud claims, (Doc. 42, #1051–52), although it doesn't identify exactly which claims those are. Nonetheless, as to the fraud claims, it argues that the Court, much like the Court had done with the antitrust claims, construed facts in Defendant's, rather than Plaintiffs',

favor. (*Id.*). Specifically, Brave Optical challenges the Court's determination that, based on the facts alleged in the Complaint, it was clear that Plaintiffs knew about Eyecon's issues by 2018. (*Id.* at #1051). Brave Optical says that was not the case, and it seeks an opportunity to replead facts showing that it was not aware of Eyecon's problems until later.[10]

Because the Court is providing Brave Optical leave to file a proposed Amended Complaint expanding on its antitrust claims (Counts 1, 2, and 3) to address the continuing violation problem noted above, the Court will also allow it to include additional allegations in support of what it understands Brave Optical's fraud claims to be—Counts 5 and 6.

## CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** and **DENIES IN PART** Brave Optical's Motion for Reconsideration and for Leave to Amend (Doc. 42). The Court **AMENDS** its prior Order as follows: The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's antitrust claims and fraud claims (Counts 1, 2, 3, 5, and 6) because Plaintiff potentially could cure the deficiencies identified above. Plaintiff may move to amend the Complaint within 30 days of the filing of this Opinion and Order and must attach the proposed amended pleading to any such

---

[10] Plaintiff also argues that Western State could not have known of Eyecon's alleged problems because Western State did not purchase its franchise until November 2019. (Doc. 42, #1051). In its Motion for Leave to Amend, however, Western State is dropped as a plaintiff because it sold its franchise and entered into a general release with Luxottica. (Doc. 43, #1057). *See* supra note 1. Because Western State is no longer involved in this case, the Court declines to address that argument here.

motion. Failure to move within that time will result in the entry of judgment for Luxottica. Because the Court grants a new opportunity to amend the Complaint, the Court **DENIES AS MOOT** Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 43), Defendant's Motion for Leave to File Exhibits Under Seal (Doc. 48), and Defendant's Motion for Leave to File Sur-Reply (Doc. 51).

      **SO ORDERED.**

February 11, 2026
**DATE**

          **DOUGLAS R. COLE**
          **UNITED STATES DISTRICT JUDGE**